UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JUSTIN J. CARRION, | ) | CASE NO. 1:17CV1992 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| NANCY A. BERRYHILL[1], | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | REPORT AND RECOMMENDATION |
| SECURITY ADMINISTRATION, | ) | OF MAGISTRATE JUDGE |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Justin J. Carrion ("Plaintiff") requests judicial review of the final decision of the

Commissioner of Social Security Administration ("Defendant") finding that he was not disabled

and therefore not entitled to Supplemental Security Income ("SSI").  ECF Dkt. #1.  In his brief

on the merits, filed on January 11, 2018, Plaintiff asserts that the administrative law judge

("ALJ") made a residual functional capacity ("RFC") finding that was ambiguous and failed to

ask the vocational expert ("VE") whether the jobs identified were consistent with the *Dictionary

of Occupational Titles* ("*DOT*").  ECF Dkt. #15 at 13-17.  Defendant filed a response brief on

February 6, 2018.  ECF Dkt. #16.  Plaintiff filed a reply brief on February 20, 2018.  ECF Dkt.

#17.

For the following reasons, the undersigned RECOMMENDS that the Court AFFIRM the

ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.

I.      PROCEDURAL HISTORY

An application for SSI was filed on behalf of Plaintiff, who was under the age of

eighteen, on June 26, 2014.  ECF Dkt. #11 ("Tr.") at 149.[2]  Plaintiff's claim was denied initially

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security,
replacing Carolyn W. Colvin.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as
a .PDF, rather that the page numbers assigned by the CM/ECF system.  When the Transcript was filed the
.PDF included an index, with the indexed pages differentiated from the numerical pages.  Accordingly, the

and upon reconsideration. *Id.* at 110-17.  After this denial, Plaintiff requested a hearing before

an ALJ and the hearing was held on June 7, 2016. *Id.* at 34.  On August 31, 2016, the ALJ

issued a decision concluding that Plaintiff was not disabled under the five-step sequential

evaluation. *Id.* at 8.  Subsequently, the Appeals Council denied Plaintiff's request for review.

*Id.* at 1.  Accordingly, the decision issued by the ALJ on August 31, 2016, stands as the final

decision.

      The instant suit was filed by Plaintiff on September 22, 2017.  ECF Dkt. #1.  Plaintiff

filed a brief on the merits on January 11, 2018.  ECF Dkt. #15.  Defendant filed a response brief

on February 6, 2018.  ECF Dkt. #16.  Plaintiff filed a reply brief on February 20, 2018.  ECF

Dkt. #17.

## II.  RELEVANT MEDICAL AND TESTIMONIAL EVIDENCE

### A.  Medical Evidence

      Plaintiff began receiving special education services when he was in the second grade in

2003.  Tr. at 255.  In 2007, Plaintiff began receiving special education services for autism. *Id.*

Testing performed in 2013 for Plaintiff's eleventh-grade school year showed: poor social

perception; a tendency to isolate; concrete thinking; difficulty transitioning from one activity to

another; difficulty adapting to unexpected changes; difficulty understanding or accepting others'

perspectives; a lack of empathetic skills; inappropriate expression of emotions or behaviors

given the circumstances; lack of emotional resilience; difficulties with frustration tolerance and

anger management; and a tendency to "shut down" in class under certain conditions. *Id.* at 260,

302.  Plaintiff's scores on an adaptive behavior assessment placed him in the first percentile and

it was noted that he required a "highly structured educational environment in which he [would

be] given individual attention and the opportunity to learn in a small-group setting." *Id.* at 278-

79.

---

page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than
the page number assigned when the Transcript was filed in the CM/ECF system.

-2-

Special education services continued when Plaintiff attended the Lorain County Joint Vocational School for his twelfth-grade school year. Tr. at 217, 242. The October 2014 student profile for Plaintiff's individualized education program ("IEP") noted that he did not have difficulty attending to lessons but worked at a very slow pace in the classroom and required extended time. *Id.* at 223. It was further noted that Plaintiff had underdeveloped self-advocacy skills that may have been the reason for his inconsistent levels of success, and that he needed to constantly ask for help or clarification of all his assignments. *Id.* In 2015, Plaintiff's teacher indicated that he frequently struggled with materials in class and did not typically ask for help. *Id.* at 207. It was further noted that Plaintiff could complete most single-step directions but needed redirection when given multi-step directions. *Id.* at 10. Additionally, Plaintiff's teacher stated that he was not a behavior problem and that he did not usually initiate interactions with others. *Id.* at 211. It was also noted that Plaintiff would accept help but would not seek it out. *Id.* at 213. Additionally, Plaintiff's teacher indicated that he was not always aware of how much remediation and modification he received in school, and that she did not think he fully understood his deficits compared to his non-impaired peers.[3] *Id.* at 214.

In March 2014, Joseph Hoelscher, Ed.D., performed a psychological re-evaluation at the request of Plaintiff's parents. Tr. at 480. Plaintiff displayed a full-scale IQ score of eighty, and was diagnosed with: attention deficit hyperactivity disorder ("ADHD"), primary inattentive presentation; autism spectrum disorder without accompanying intellectual impairment; specific learning disorder with impairment in reading; and specific learning disorder with impairment in mathematics. *Id.* at 481. In September 2014, Plaintiff underwent a psychological evaluation at the request of the state agency and was diagnosed with mild ADHD. *Id.* at 499. It was also noted that Plaintiff could perform routine and moderately complex tasks. *Id.* at 500. Also in

---

[3]Plaintiff also took the Tests of Adult Basic Education three times between late 2013 and early 2015. In December 2013, Plaintiff's scores were in the second- and third-grade level. Tr. at 171. Plaintiff's scores in June 2014 indicated that his reading was at the fifth-grade level and his language was at the third-grade level. *Id.* at 247. In February 2015, Plaintiff's reading was at the sixth-grade level, language was at the fourth-grade level, and math was at the second-grade level. *Id.* at 336.

September 2014, an agency reviewing psychologist reported that Plaintiff had no severe impairments. *Id.* at 502.

A second agency reviewing psychologist disagreed in February 2015 and reported the severe impairments of ADHD and autistic disorder. *Id.* at 102. It was also noted that Plaintiff had: moderate restriction of activities of daily living; autistic disorder and other pervasive developmental disorders; difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. *Id.* at 102-103. Further, it was stated that Plaintiff: could perform one-to-three step tasks with no more than moderate pace or production quotas; may need extra time and repetition for new learning; could have superficial interaction with others, but no customer service duties; and needed a predictable environment with infrequent changes. *Id.* at 105-106. Between June 2015 and May 2016, Plaintiff took the driver's license knowledge test eight times and failed on each attempt. Tr. at 343-46. Plaintiff took the test on paper, by computer, and using an interpreter. *Id.*

## B.    Testimonial Evidence

A hearing before the ALJ was held on June 7, 2016, with Plaintiff, his mother, Judy Carrion, and a VE present. Tr. at 36. At the outset of the hearing, the ALJ noted that Plaintiff did not have legal representation and informed him of his right to representation. *Id.* at 37. After being informed of his right to representation, Plaintiff indicate that he understood and that he wished to go ahead with the hearing without obtaining representation. *Id.* at 37-38. Plaintiff also stated that he had received the notice of the hearing that explained the issues that would be decided and that he understood those issues. *Id.* at 38.

On examination by the ALJ, Plaintiff testified that he graduated from high school the prior year and that he went to the Lorain County Joint Vocational School for his twelfth-grade school year and studied graphic design. Tr. at 43. Plaintiff indicated that his grades were "around like B's, C's" in school. *Id.* at 44. Continuing, Plaintiff stated that he was attending college at Lorain County Community College where he was taking classes in graphic design and would have an associate degree in graphic design when he finished. *Id.* at 45. Plaintiff testified that he would be able to perform advertising work for clients after he received his degree and

-4-

that he had completed a summer internship.  *Id.*  When asked how he did during the internship, Plaintiff stated that "[t]hey loved [his] work" and that one of the projects he completed was a slide show comprised of all the work that was done during the year.  *Id.* at 46.  Additionally, Plaintiff testified that he performed work for clients that came to his class with graphic design projects.  *Id.* at 46-47.  When asked about other jobs, Plaintiff stated that he had two internships with Step By Step that "went okay."  Tr. at 48.  Plaintiff stated that he performed work stocking and cleaning at a Payless Shoe Store in the mall and that he had a job coach that assisted him until he "pick[ed] it up."  *Id.* at 48-49.  Continuing, Plaintiff stated that he also worked at Nissan where he cleaned vehicles and swept the parking lot, and that he also had a coach for this job.  *Id.* at 49.

Next, the ALJ asked Plaintiff if he had classes at home, and Plaintiff testified that all of his classes were on campus.  Tr. at 49.  Plaintiff then stated that he had friends on campus that he saw "all the time."  *Id.*  Continuing, Plaintiff indicated that he ate lunch with his friends and sometimes hung out in the gaming lounge.  *Id.* at 50.  Plaintiff stated that the gaming lounge had video games, card games and board games, and that he liked to play the games with his friends.  *Id.*  When asked about his activities with friends off campus, Plaintiff indicated that his friends from school visited him at home and that when visiting they would talk or play basketball outside.  *Id.* at 50-51.  Plaintiff stated that he did not visit his friends at their homes because he did not have his driver's license, but that he liked going to other places.  *Id.* at 51.  When asked about what other places he liked going, Plaintiff testified that he had been going to the movies, the flea market, and visiting relatives with his father.  *Id.* at 51-52.

The ALJ then asked Plaintiff what other activities he enjoyed.  Tr. at 52.  Plaintiff testified that he liked to read and liked drawing.  *Id.*  Continuing, Plaintiff stated that he was not spending as much time drawing as he should since he needed to know how to draw for his profession, and noted that he mostly drew cartoon characters and drew for at most maybe an hour.  *Id.* at 52-53.  Plaintiff stated that his college classes were full-time, but his mother, Ms. Carrion, interjected to state that he was not a full-time student, he took three classes per quarter, and it would take him longer than the normal two years to complete his degree.  *Id.* at 53.  The

-5-

ALJ then asked Plaintiff how he was doing in his math class and Plaintiff stated he passed with a B. *Id.* at 54. Plaintiff's mother again interjected to state that Plaintiff failed the math class on his first try and needed to retake the course. *Id.* The ALJ then asked Plaintiff about his grade in English, and Plaintiff indicated that he had only taken math and graphics classes. *Id.* When asked about his duties around the house, Plaintiff testified that he was responsible for taking out the trash and recycling, but he usually needed a reminder. Tr. at 55.

Ms. Carrion was then examined by the ALJ. Tr. at 56. When asked why she believed Plaintiff could not work, Ms. Carrion testified that he lost focus on tasks requiring more than two steps and had a hard time staying on task. *Id.* at 57-58. Continuing, Ms. Carrion stated that Plaintiff did not seek help from instructors when needed and that this problem also occurred when he was in high school. *Id.* at 58. The ALJ asked Plaintiff whether he would be able to follow a list if he wrote down his tasks, to which Plaintiff responded in the affirmative and agreed a list would be a good solution to this problem. *Id.* at 59. When asked how he was handling college, Plaintiff stated that he was "getting used to it." *Id.* at 60.

The ALJ then asked Plaintiff whether he had any problems physically, and Plaintiff responded in the negative. Tr. at 61. Ms. Carrion then stated that she and Plaintiff's father tried to be very hands on and that his father took him to campus when he signed up for classes to show him where he needed to go for class and help him shop for books. *Id.* Plaintiff stated that his mother dropped him off at school and that he could take the public bus to school if he woke early enough. *Id.* at 62. Ms. Carrion stated that she was concerned about Plaintiff taking the public bus to school because it was a long trip to school and she and Plaintiff's father would need to ensure that he boarded the correct bus. *Id.* at 63. The ALJ then asked Plaintiff if he had trouble when he took the bus home from school and Plaintiff stated that he took the correct bus home. *Id.* at 63-64. Ms. Carrion stated that the problem was setting up a routine for Plaintiff since he would not ask others for help. *Id.* at 64.

Continuing, Ms. Carrion testified that Plaintiff only had one friend, was not "wired that way to think about going out with friends," and "really doesn't have" a social life. Tr. at 65. The ALJ then asked Plaintiff if he would like to go places with friends and Plaintiff indicated

-6-

that he would and that he had gone places with friends before.  *Id.*  Plaintiff stated that he had gone to the mall and flea market with friends, and added that he had a good time at the mall.  *Id.* at 65-66.  Ms. Carrion stated that she did not know Plaintiff had gone to the mall.  *Id.* at 66.

The ALJ then asked Plaintiff if he could make change, and after indicating that he could "not really" make change, Plaintiff stated that he could buy items and would know if he was given the correct change.  Tr. at 68.  Plaintiff then stated that if he was at the mall and saw an item he wanted to buy, he would know if he had enough money for the purchase.  *Id.* at 68-69.  Ms. Carrion indicated that Plaintiff's statement was not true and reminded him that he had problems counting money.  *Id.*  Continuing, Ms. Carrion stated that Plaintiff had poor social skills and social perception, and that he did not have a good understanding of empathy.  *Id.* at 70-71.  The ALJ then asked Plaintiff if he would know if someone was sad, to which Plaintiff responded in the affirmative.  *Id.* at 71.  Plaintiff also stated that he could tell when his mother was mad and that he could sometimes tell that his mother was upset when he did not know why she was upset, but that he could tell when she was upset with him.  *Id.*

The ALJ then examined the VE.  Tr. at 72.  Upon examination, the VE testified that all of Plaintiff's prior jobs were short-term work rather than past relevant work.  *Id.* at 73.  The ALJ then posed a hypothetical individual of Plaintiff's age, education, and work background who had: no exertional limitations; the capacity to understand, remember, and follow instructions for simple tasks, but may need extra time and repetition for new learning; the ability to tolerate work pressures to perform simple tasks without fast pace requirements or high production quotas; the ability to interact with others on a superficial level at a job not requiring customer service duties, conflict resolution, or persuading others; and the capacity to work in a predictable environment with infrequent changes.  *Id.*  The VE testified that there would be work for such an individual as a packager, laundry worker, and industrial cleaner.  *Id.* at 74.  Additionally, the VE provided the *DOT* number for each of these jobs.  *Id.*  Ms. Carrion then expressed concern over Plaintiff's ability to handle the jobs presented by the VE and the VE explained that every job had a quota, supervisor, and expectations.  *Id.* at 75-78.  Plaintiff indicated that he did not have any additional questions.  *Id.* at 78.  Ms. Carrion then stated that Plaintiff "got overwhelmed" and "does shut

-7-

down" before indicating that she had nothing further to add.  *Id.* at 79.  Accordingly, the ALJ concluded the hearing.  *Id.* at 80.

## III.     RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ issued a decision on August 31, 2016.  Tr. at 8.  After explaining the child standard of disability and the adult standard for disability, the ALJ stated that Plaintiff was born on July 3, 1996, and was therefore in the adolescent age group on June 24, 2014, the date the application was filed.  *Id.* at 12-15.  The ALJ then indicated that Plaintiff attained age eighteen on July 2, 2014.  *Id.* at 15.  Continuing, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date the application was filed.  *Id.*  The ALJ determined that before attaining age eighteen, Plaintiff had the following severe impairments: autistic disorder and other pervasive development disorder, and ADHD.  *Id.* at 16.  Next, the ALJ found that before attaining age eighteen, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1, Part A or B.  *Id.*  The ALJ determined that before attaining age eighteen, Plaintiff did not have an impairment or combination of impairments that functionally equaled the listings.  *Id.*  To this point, the ALJ discussed the six domains of function, namely: (a) acquiring and using information; (b) attending and completing tasks; (c) interacting and relating to others; (d) moving about and manipulating objects; (e) caring for yourself; and (f) health and physical well-being.  *Id.* at 16-23.

Continuing, the ALJ determined that Plaintiff was not disabled prior to attaining age eighteen because he did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled the listings.  Tr. at 23.  The ALJ also determined that Plaintiff had not developed any new impairment or impairments since attaining age eighteen.  *Id.*  Next, the ALJ stated that since attaining age eighteen, Plaintiff had continued to have a severe impairment or combination of impairments, but had not had an impairment or combination of impairments that met or medically equaled a listed impairment.  *Id.*

After consideration of the record, the ALJ found that, since attaining age eighteen, Plaintiff had the RFC to perform a full range of work at all exertional levels with the following

non-exertional impairments: understand, remember, and follow instructions for simple tasks, but

may need extra time and repetition for new learning; tolerate work pressures to perform simple

tasks without fast pace requirements or high production quotas; interact with others on a

superficial level at a job not requiring customer service duties, conflict resolution, or persuading

others; and work in a predictable environment with infrequent changes.  Tr. at 24.

Continuing, the ALJ stated that Plaintiff had no past relevant work, was a younger

individual, had a limited education, and was able to communicate in English.  Tr. at 26-27.  The

ALJ then indicated that the transferability of job skills was not an issue because Plaintiff did not

have past relevant work.  *Id.* at 27.  Considering Plaintiff's age, education, work experience, and

RFC since attaining age eighteen, the ALJ determined that jobs existed in significant numbers in

the national economy that Plaintiff could perform.  *Id.*  For these reasons, the ALJ found that

Plaintiff had not been under a disability, as defined in the Social Security Act, since July 2, 2014,

the day he attained age eighteen, through the date of the decision.  *Id.* at 28.

## IV.  STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to

social security benefits.  These steps are:

1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.  An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see  20 C.F.R.  § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.  If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.  If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cole v. Astrue*, 661 F.3d 931, 937 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted)).  Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007).  Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled.  The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (citations omitted).

## VI.    LAW AND ANALYSIS

### A.    RFC Finding

Plaintiff first asserts that the ALJ's RFC finding and corresponding hypothetical question were ambiguous and lacked vocational specificity.[4]  ECF Dkt. #15 at 13.  Specifically, Plaintiff takes issue with the ALJ's finding that he "may need extra time and repetition for new learning." *Id.*  Plaintiff further avers that the VE did not request clarification on this point when the ALJ posed the hypothetical question, and instead responded with the three occupations the ALJ later relied on at step five.  *Id.*  Continuing, Plaintiff asserts that the ALJ's phrasing, specifically the use of "may" in the hypothetical question and RFC finding, implies that Plaintiff may not need extra time and repetition for new learning.  *Id.*  Plaintiff stated that a VE's testimony is only evidence of non-disability if the hypothetical question was accurate and that the hypothetical question must precisely state the particular physical and mental impairments affecting the claimant.  *Id.* (citing *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir. 1975); *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975); *Varley v. Sec. of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)).

According to Plaintiff, it is not clear whether the ALJ intended that the VE include the need for extra time and repetition in every circumstance of new learning.  ECF Dkt. #15 at 13-14. Plaintiff states that the "need for a few moments of time and a few repetitions is not the same as needing much more time and many more repetitions than may be required by an average worker in a competitive environment," and that extra time and repetition meant an increase in the time that Plaintiff would be off task.  *Id.* at 14.  Plaintiff also states that the ALJ limited him to performing no "fast pace requirements or high production quotas," but then, later in the decision, noted that Plaintiff's IEP limited him, in part, to "limited production" and "low production standards."  *Id.* (citing Tr. at 24, 26).

---

[4]Plaintiff's arguments concern the ALJ's findings regarding this claim for SSI benefits after he attained the age of eighteen.  *See* ECF Dkt. #15.

Defendant contends that the ALJ's RFC determination was proper.  ECF Dkt. #16 at 8. First, Defendant asserts that the RFC includes only the limitations the ALJ found consistent with the record as a whole.  *Id.* (citing *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155-56 (6ᵗʰ Cir. 2009)).  Continuing, Defendant states that the RFC is "the most you can still do despite your limitations."  *Id.* (citing 20 C.F.R. § 416.945).  Defendant then asserts that the VE considered the hypothetical individual posed by the ALJ, and that the ALJ's RFC determination and hypothetical question were clear and adequate.  *Id.* at 9.  In conclusion, Defendant states that substantial evidence supports the ALJ's RFC findings.  *Id.*

Plaintiff's argument is without merit.  Despite Plaintiff's argument otherwise, Defendant correctly asserts that RFC is defined as the most a claimant can still do despite the physical and mental limitations resulting from his impairments.[5]  *Poe*, 342 F. App'x at 155 (citing 20 C.F.R. §§ 404.1545(a), 416.945(a)).  Here, the ALJ's RFC finding accurately reflects the most Plaintiff can still do despite his impairments.  The portion of the hypothetical question and the RFC finding Plaintiff takes issue with states that he "may need extra time and repetition for new learning."  *See* ECF Dkt. #15 at 13-15.  Plaintiff argues that the ALJ's phrasing is ambiguous as to how much extra time and repetition may be required.  *Id.*

The undersigned disagrees.  In the RFC finding, the ALJ specifically notes that Plaintiff may need extra time and repetition for new learning.  Plaintiff claims that the ALJ did not specify how often he would need extra time and repetition, or how much extra time and repetition would be needed.  Regarding how often he would need extra time and repetition, the ALJ specifically stated that Plaintiff would need extra time and repetition for new learning. Accordingly, Plaintiff would need extra time and repetition when learning new tasks.  The RFC finding is not ambiguous as to when Plaintiff would need extra time and repetition.

As for how much time and repetition would be needed, Plaintiff states:

---

[5]In the reply brief, Plaintiff claims that *Poe* does not support Defendant's argument because the case focused on the treating physician rule.  ECF Dkt. #17 at 1.  In fact, the Sixth Circuit in *Poe* was making a general statement about the meaning of RFC, rather than any statement specific to cases involving the treating physician rule.  *See* 342 F. App'x at 155.

> Also unstated is how much extra time and how much repetition [Plaintiff] would require for new learning.
>
> This distinction matters.  A need for a few moments of time and a few repetitions is not the same as needing much more time and many more repetitions than may be required by an average worker in a competitive environment.  Extra time and extra repetition means worktime in which the person is not performing his job requirements.  The [VE] testified that if a person's pace rendered him off-task 20% of the time, "there would be no work for that person."

ECF Dkt. #15 at 14.  Based on the above, it appears that Plaintiff claims that the ALJ should have provided a breakdown of the exact amount of time and/or number of repetitions that he would need in the RFC finding/hypothetical question.  Plaintiff cites *Varley* for the proposition that the hypothetical question posed by the ALJ to the VE must be precise, however, *Varley* does not support the degree of precision now requested by Plaintiff.  *Id.* at 13.  Further, Plaintiff provides no suggestion as to how the ALJ could accurately make such a finding, which would be required to span across several jobs that the VE offered.  Moreover, the *DOT* is not specific enough to allow an ALJ to make the requested findings, as each section of the *DOT* contains a list of activities associated with the job rather than a specific breakdown of the tasks that every individual that could work the job would be performing.  *See DOT* 361.685-018 (laundry worker), 389.683-010 (sweeper-cleaner, industrial), 920.587-018 (packager, hand).  The ALJ provided substantial evidence supporting the RFC finding and cited unskilled jobs that fit those parameters.  Tr. at 24-27.

Plaintiff also claims that the ALJ "further confounds [the] finding of [RFC] in the narrative of the decision" because the RFC limited him to no fast pace or high production quotas, but later stated that the IEP records support limiting him, in part, to limited production and low production standards.  ECF Dkt. #15 at 14 (citing Tr. at 24, 26).  The ALJ stated, in relevant part:

> The undersigned has reviewed and analyzed all evidence of record, including medical records, whether or not they have been specifically discussed in the decision.  In sum, the [RFC] assessment is supported by the objective medical evidence contained in the record.  Treatment notes in the record do not sustain [Plaintiff's] allegations of a disabling impairment.  [Plaintiff's] IEP records, social withdrawal and adaptive deficits, cognitive scoring, and ongoing symptoms support limiting [Plaintiff] to simple tasks, with limited production, extra time for learning, low production standards, infrequent changes in the work places, and a

-13-

few social demands. The undersigned finds that [Plaintiff] experienced some limitations but only to the extent described in the [RFC] above.

Tr. at 26.  This portion of the ALJ's decision makes clear that the ALJ was including limited production and low production standards "only to the extent described in the [RFC]."  *Id.* The ALJ did just that when Plaintiff's production standards were limited to "simple tasks without fast pace requirements or high production quotas."  *Id.* at 24.  Accordingly, the undersigned recommends that the Court find that the ALJ's RFC finding was proper.

**B.**     *DOT*

Next, Plaintiff asserts that the ALJ failed to provide a full and fair hearing by not asking the VE whether the jobs identified were consistent with the *DOT*.  ECF Dkt. #15 at 15.  Plaintiff states that the applicable rules and regulations require that the ALJ resolve any conflict between the VE's testimony and the *DOT*, and that at no time during the hearing did the ALJ ask, nor did the VE state, whether the testimony was consistent with the *DOT*.  *Id.* at 15-16.  Further, Plaintiff avers that he was without counsel at the hearing, and thus the Court must scrutinize the record with care.  *Id.* at 16 (citing *Holden v. Califano*, 641 F.2d 405, 408 (6th Cir. 1981)).  Defendant contends that the ALJ found that the VE's testimony was consistent with the *DOT* except for job numbers, which came from the VE's professional experience and knowledge along with statistics.  ECF Dkt. #16 at 9.  Further, Defendant contends that the ALJ's failure to inquire about conflicts between the *DOT* and the VE's testimony is harmelss when the differences are irrelevant.  *Id.* at 10 (citing *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 508 (6th Cir. 2013) (internal citation omitted)).

Plaintiff's argument fails.  The Sixth Circuit has held that an ALJ's error in not inquiring about potential conflicts is harmless when those conflicts are irrelevant.  *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 508 (6th Cir. 2013).  Further, the Sixth Circuit has explained that an ALJ is not required to "conduct an independent investigation into the testimony of witnesses to determine if they are correct."  *Id.* (quoting *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006)).

-14-

In this instant case, the ALJ has the following exchange with Plaintiff and his mother after the VE identified three jobs that Plaintiff could perform based on the hypothetical question and included the corresponding *DOT* listings:

> ALJ: So what [the VE] did, he took the list of limitations that I gave.  And there's a book called the *DOT*, it's the *Dictionary of Occupational Titles*.  And it lists out not all, but most of the jobs that -
>
> Ms. Carrion: Uh-huh.
>
> ALJ: - exist in the country and it categorizes them by different factors, how much you have to lift, how much training you need, how much experience, all these different factors.  And he took the limitations I gave and found these jobs that a -
>
> Ms Carrion: Yeah.
>
> ALJ: - person with those limitations could do.  There would be other jobs also, but these are examples of jobs.
>
> Ms. Carrion: Uh-huh.
>
> ALJ: And so its my job to determine whether that's a significant number of jobs.  But you could ask [the VE] questions also.  You could add limitations or change limitations -
>
> Ms. Carrion: Uh-huh.
>
> ALJ: - and then [the VE] would respond according -
>
> Ms. Carrion: Uh-huh.
>
> ALJ: - to what you had in mind.

Tr. at 74-75.  While the ALJ did not expressly ask the VE whether the testimony was consistent with the *DOT*, the ALJ did explain to Plaintiff and his mother the role that the VE was serving at the hearing.  The ALJ also determined in the decision that the VE's testimony was consistent with the *DOT*.  *Id.* at 27.  Additionally, although Plaintiff was not represented at the hearing, the ALJ explained to Plaintiff his right to have a representative in detail and Plaintiff chose to proceed without representation.  *See id.* at 37-38.  Moreover, Plaintiff fails to allege any actual error that existed between the *DOT* and the jobs the VE testified that Plaintiff could perform.  Accordingly, the fact that the ALJ did not expressly ask the VE whether his testimony was consistent with the *DOT* is irrelevant and thus any error is harmless.  For these reasons, the

-15-

undersigned recommends that the Court find that the ALJ afforded Plaintiff a full and fair hearing.

## VII.    CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.


Date: July 31, 2018                                        */s/George J. Limbert*
                                                            GEORGE J. LIMBERT
                                                            UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d